## KANALOA *et al. vs.* J. N. QUINN *et al.*

### EJECTMENT. BEFORE JUDD, C.J.

### MAY, 1888.

Long acquiescence in adverse possession, though not a bar till after twenty years, held to be significant.

Plaintiffs in ejectment held not to have sustained the burden cast on them of proving their title.

### DECISION OF JUDD, C.J.

This is an action of ejectment to recover one undivided half of some sixteen acres of land situate at Kapaau, Kohala, Hawaii, granted by Royal Patent No. 4888 to one Haaheo.

The plaintiff, Kanaloa, claims to be entitled to one-fourth of

this estate by descent from the patentee, Haaheo, and to one-fourth by purchase from Kane, her brother. Only the defendants George Hall and Lahapa have answered, service upon the guardian *ad litem* of the minors Quinn appearing to be defective.

Haaheo died without issue, intestate and insane, in April, 1868, and both plaintiffs and defendants admit that he left a widow, Kahue, who survived him about a year. The plaintiff, Kanaloa, claims that she and Kane (her brother) were children of Kainoa by Kawahalelee; that Kainoa was the son of Maunaoloia by Kamealani, and that Maunaoloia was the brother of Kainapau, who is admitted by defendants to be the father of Haaheo (patentee) by his wife Kilioe. The plaintiffs claim that Kukanao (k.) and Kanaloa (w.) were parents of Kainapau and Maunaoloia. The defendants concede that Kukanao was the father of Kainapau, but claim that Kainapau's mother was Kameawahine, and not Kanaloa; and they claim that Kukanao had but one child, Kainapau, and that Maunaoloia was not his son.

Some eighteen witnesses were examined, and as is common in cases like this of contested genealogy, the evidence, being mainly derived from conversations with members of the family, is very contradictory. To ascertain whether Kukanao had one son only, or whether he had two sons, requires a knowledge of events that happened in this country at the beginning of this century, when there was no knowledge of writing, and no courts and no records wherein to perpetuate these events. I am required to settle the question whether or not the grandfather of a man who died an old man, twenty years ago, had a second son by a woman whom we call his "wife," in want of a better term to distinguish the relation that then existed between man and woman long before Christian marriage was introduced here.

To guide me over this sea of uncertainty, where one class of apparently truthful witnesses declare that Maunaoloia was the son of Kukanao, and another class, apparently equally truthful

and respectable, assert that Kainapau only was known by them and their ancestors to be the son of Kukanao, I am obliged to resort to some particular features of the testimony. One is this: Nearly all the witnesses say that Kainapau, the father of the patentee (Haaheo), was known by them and all residents of Kohala to be a chief, and the defendants' witnesses say that though familiar with the family, many of them having been its retainers, they never knew or heard of Maunaoloia as being a chief or a brother of Kainapau.

I do not go to the extent of saying that it is not possible for a chief to have had a brother who was lost sight of because from a different mother of low rank, or from not being in favor with the King or high chiefs, and not have lands in his possession, or have become obscure from his having removed to a remote part of the kingdom. But the plaintiffs' witnesses locate Maunaoloia as living and dying at Kohala, and as having the same mother as well as father as Kainapau. Witnesses would, I think, be less likely to be mistaken in regard to the rank of an individual than in regard to his ancestry; and as I am of opinion that Kainapau is shown to have been a chief, I regard it as very much against the parentage claimed by defendants for Maunaoloia that he was not acknowledged by the witnesses to be also a chief.

I am also impressed with the want of knowledge shown by many of the plaintiffs' witnesses of the genealogy of the wives of Kainoa and Maunaoloia, whereas they testify very definitely of the genealogy of the men themselves.

On the whole case, I am of the opinion that the weight of evidence preponderates in favor of the defendants, and I am not convinced that Maunaoloia (the grandfather of plaintiff, Kanaloa) was the uncle of Haaheo (patentee).

The burden of proof is upon the plaintiffs. They must recover, if at all, upon the strength of their own title and case.

There are other incidents that lead me to this conclusion.

In 1868 certain proceedings were had in the Probate Court at Kohala, before Circuit Judge Naiapaakai, in the estate of

Haaheo. The plaintiff, then thirty years old, and her family were there, and must have known of the proceedings. Kahue, the widow, applied for and was appointed administratrix of the estate, and the property was finally decreed to her as the sole heir. This was the course usually followed, if no collateral heirs appeared.

The decree is too informal to operate as a bar to this suit, and is not pleaded as such. But the silence of the plaintiff, Kanaloa, at this time, and her long acquiescence in the adverse possession of this property by defendants, though they are not a complete defense, as the Statute of Limitations had not quite run when this action was begun, are very significant, and throw great doubt on the truthfulness of her claim that she was an heir of Haaheo.

I do not proceed to discuss the nature of the defendants' claim to the land, though they have introduced deeds from Kahue, the widow of Haaheo, and have undertaken to show descent from Kilioe, the mother of Haaheo (patentee), to Kaleimamahu, a grantor of some of the defendants. The plaintiffs' case having, in my opinion, failed, it is not necessary to discuss the defendants' title under which they have possession.

Judgment for defendants, with costs.

*M. Thompson,* for plaintiffs.

*Kinney* and *Rosa,* for defendants.

Honolulu, May 10, 1888.